# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BRADLEY TALMADGE LIVINGSTON,<br><br>Plaintiff,<br><br>v.<br><br>GARDAWORLD, LLC, *et al.*,<br><br>Defendants. | Civil Action No. 23-23006 (JXN)(SDA)<br><br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is *pro se* Plaintiff Bradley Talmadge Livingston's ("Plaintiff") timely objections (ECF No. 214) to Magistrate Judge Stacey D. Adams' May 13, 2025 Report and Recommendation ("R&R") recommending dismissal of Plaintiff's Complaint without prejudice for failure to prosecute and discovery violations (ECF No. 204). The Court has reviewed the R&R, Plaintiff's objections, and the record. For the reasons that follow, Plaintiff's objections are **DENIED**, the R&R is **AFFIRMED**, and the Complaint is **DISMISSED** *without prejudice*.

## I.    BACKGROUND

Plaintiff, a frequent filer in this District,[1] filed an employment discrimination lawsuit in this Court on December 11, 2023. (*See* Compl., ECF No. 1.) He alleges his former employers, GardaWorld LLC and Emanuel Johnson ("Defendants"), changed his hours and fired him because of his race and in retaliation for making complaints about other employees. (*Id.* at *11.[2])

---

[1] *See Livingston v. Baldwin*, No. 25-2715; *Livingston v. United States*, No. 25-2328; *Livingston v. Uber*, No. 24-5839; *Livingston v. City of Englewood*, No. 24-3696; *Livingston v. Gallina*, No. 24-8862; *Livingston v. Borough of Elmwood Park*, No. 24-1210; *Livingston v. Hibbert-Livingston*, No. 24-1216; *Livingston v. Williams*, No. 24-1056; *Livingston v. Securitas Critical Infrastructure Servs., Inc.*, No. 24-5838; *Livingston v. Thrive at Montvale*, No. 23-23004.

[2] Pincites preceded by an asterisk (*) indicate pagination according to CM/ECF headers.

Before Defendants answered, "Plaintiff began blanketing the docket with countless, baseless filings and applications, such as requests for default (ECF Nos. 16, 17, 20), requests for final judgment (ECF No. 9), and letters purporting to provide the Court with 'evidence.' (ECF Nos. 13, 14)." (R&R at 2). Plaintiff's "constant submissions only increased" after Defendants filed an answer. (*Id.*)

**A.    Motion to Dismiss for Discovery Violations**

Judge Adams held an initial pretrial conference on July 25, 2024, and entered a Pretrial Scheduling Order the next day. (*See id.*; Scheduling Order, ECF No. 54.) The judge "required initial disclosures to be served by August 5, 2024, discovery requests to be served by August 9, 2024, and discovery responses to be served in accordance with the time frames set by the Federal Rules." (R&R at 2; *see also* Scheduling Order.) Judge Adams set January 31, 2025, as the close of fact discovery. (Scheduling Order.) Defendants timely served their initial disclosures and discovery requests; Plaintiff did not. (*See* Defs.' Moving Br. 2, ECF No 127-1.) Despite numerous deficiency letters, (*see, e.g.*, ECF Nos. 127-2, 127-3), a court order directing Plaintiff to respond, (ECF No. 57), and a motion to compel, (ECF No. 70), Plaintiff submitted evasive, cryptic, and incomplete answers two months late, (*see, e.g.*, ECF No. 74), and failed to provide responsive documents.

Following a December 10, 2024 status conference, Judge Adams ordered Plaintiff to serve his initial disclosures and supplement his deficient responses by December 20, 2024. (Am. Scheduling Order, ECF No. 105.) Judge Adams warned that granting Defendants leave to move for sanctions, up to and including dismissal, would result from Plaintiff's failure to comply. (*Id.*) Plaintiff provided supplemental responses to Defendants on December 19, 2024. (*See* ECF No. 127-4.) But Plaintiff's "supplemental responses were again deficient as Plaintiff still failed to

respond to many of the requests, failed to assert individual objections to each interrogatory, and/or failed to provide responsive documents." (R&R at 3.)

By January 13, 2025, Plaintiff had not served his initial disclosures, prompting Defendants to file a motion to dismiss for discovery violations. (*See* Defs.' Moving Br.) Plaintiff filed two letters in opposition. The first was "nearly indecipherable," but broadly alleged Defendants' discovery requests were designed to humiliate him. (R&R at 4; *see also* ECF No. 128.) The second "was couched as a response to a motion to dismiss for failure to state a claim" and did not address any of Plaintiff's discovery violations. (R&R at 4; *see also* ECF No. 154.)

### B.    Order to Show Cause

At the December 10, 2024 status conference, Judge Adams scheduled another conference for February 5, 2025. (Am. Scheduling Order.) The judge ordered the conference be held in person "due to ongoing concerns about case management, Plaintiff's repeated improper and often incomprehensible filings, Plaintiff's failure to meet his discovery obligations, and overall difficulties dealing with Plaintiff during the virtual conference." (R&R at 4.)

Plaintiff lives in Maryland. (*Id.* at 5.) Upon hearing he would have to appear in person for the February 5 status conference, Plaintiff "became noticeably agitated." (*Id.*) From then on, Plaintiff "began a campaign of filing letters and applications with the Court offering countless excuses to avoid appearing in Court, from claiming he suffers from a variety of disabilities that prevent him from traveling, to seeking recusal of the undersigned, to alleging unfair treatment." (*Id.*) In total, Plaintiff made over 100 filings. (*Id.* at 5, n.2.)

Plaintiff requested a sixty-day adjournment of the February 5 status conference to "retain counsel." (ECF No. 137.) Plaintiff later requested future conferences be held virtually because he could not drive long distances anymore "due to health issues and suffering with dizziness." (ECF

No. 140.) Following both requests, Judge Adams granted Plaintiff a sixty-day adjournment, stating "[t]he status conference is rescheduled for April 2, 2025 at 2:00 p.m. IN PERSON." (ECF No. 138.)

On April 1, 2025, Plaintiff emailed Defendants requesting to adjourn the April 2 status conference "due to a medical appointment."[3] (ECF No. 147-1.) On the morning of April 2, Defendants provided Plaintiff's email to Judge Adams. (ECF No. 147.) The judge viewed Plaintiff's claim of having a medical appointment with skepticism because: (1) Plaintiff raised his purported disabilities and inability to travel for the first time only after the judge required him to appear in person (Omnibus Scheduling Order 4, ECF No. 201); (2) the limited medical documentation Plaintiff provided (ECF Nos. 152, 166) did not indicate he had "any limitations on his ability to attend court, travel or engage in activities," (Omnibus Scheduling Order 5); and (3) Plaintiff's requested accommodation, "that he be permanently excused from any required in person Court appearances," was not reasonable, (*Id.*) Accordingly, the April 2, 2025 status conference proceeded as scheduled, but Plaintiff did not attend. (R&R at 6.)

Later that day, Judge Adams ordered Plaintiff to show cause why he should not be sanctioned for failing to attend the status conference. (ECF No. 165.) She scheduled oral argument on the Order to Show Cause ("OTSC") for April 28, 2025. (*Id.*) The judge warned that if Plaintiff failed to appear in person on April 28, she would issue an R&R recommending the matter be dismissed for Plaintiff's failure to comply with court orders and failure to prosecute. (*Id.*)

Plaintiff filed two responses. First, Plaintiff reiterated his claim that he could not attend the April 2, 2025 status conference because of health issues. (ECF No. 166.) Plaintiff attached a

---

[3] Plaintiff filed the same letter on the docket on April 1, but it was not uploaded until April 3. (ECF No. 157.) Judge Adams noted that, to the extent any of Plaintiff's filings were late, it was "almost always" due to "(i) Plaintiff putting one date on the letter but not sending it to the Court until a later date, (ii) Plaintiff not sending it to the Court at all . . . , or (iii) delays in regular mail that are beyond the Court's control."

screenshot of an email from a doctor's office sent on April 2 at 10:38 a.m., indicating Plaintiff requested an appointment on April 2 at 1:57 p.m. (*Id.* at *3), and "a screenshot from a children's urgent care indicating a 1:57 p.m. telemed appointment." (R&R at 6–7.) "Neither document indicated who the patient was or the reason for the visit." (*Id.* at 7.) Plaintiff nevertheless stated he would "make every effort to appear in person" on April 28, 2025. (ECF No. 166 at *1.) Plaintiff's second response, improperly filed as a motion, "summarily argued that [Plaintiff] did not violate any Court order or rule, or engage in any misconduct that would warrant sanctions, and stated that he has participated in this proceeding in good faith." (R&R at 7; *see also* ECF No. 187 at *3.) Plaintiff did not appear in person before Judge Adams on April 28, 2025.[4] (R&R at 1.)

### C.    R&R

Judge Adams issued a fifteen-page R&R on May 13, 2025, recommending this Court dismiss Plaintiff's complaint without prejudice for discovery violations and failure to prosecute based on the factors articulated in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984). (R&R at 8-14.) Judge Adams found: (1) Plaintiff bore personal responsibility for his conduct because "despite being afforded multiple opportunities to meet his obligations and provide fulsome discovery responses, Plaintiff simply refuse[d] to do so," (*id.* at 10); (2) Plaintiff's conduct prejudiced Defendants because "Plaintiff devotes his time to filing meritless and repeated objections, rather than simply complying with court rules and orders," (*id.* at 12); (3) Plaintiff exhibited a history of dilatoriness and noncompliance, (*id.*); (4) Plaintiff acted in bad faith based on the age of the case, the number of discovery extensions, the many opportunities Plaintiff had to correct his deficiencies, Plaintiff's repeated frivolous filings, and the "misleading nature of

---

[4] On April 30, Judge Adams entered an Omnibus Scheduling Order resolving dozens of Plaintiffs' motions. (*See* Omnibus Scheduling Order.) A week later, Chief Judge Bumb entered a Screening Order barring Plaintiff from filing new motions or actions to pursue frivolous claims. (*See* Screening Order.)

Plaintiff's medical related submissions," (*id.* at 13); (5) Plaintiff's repeated failures to appear in person indicated no lesser sanction would be effective, (*id.* at 13-14); and (6) this was one of nine actions Plaintiff filed in this District, and he frequently filed the same letters on each docket on the same date, undermining the merits of any single case, (*id.* at 14).

Plaintiff timely objected to the R&R, arguing (1) he attempted to comply with court orders in good faith, (2) dismissal would cause him prejudice, (3) there were less drastic alternatives to dismissal, and (4) his claim is meritorious. (Pl.'s Objs., ECF No. 214.)

## II.   LEGAL STANDARD

### A.   R&Rs

Magistrate judges address dispositive motions, such as motions to dismiss, through R&Rs. *See* 28 U.S.C. § 636(b)(1)(A)-(C); Fed. R. Civ. P. 72(b); L. Civ. R. 72.1(a)(2). The Court may "accept, reject, or modify, in whole or in part," the R&Rs or "receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C). An R&R does not have the force of law unless and until the Court adopts it. *United Steelworkers of Am. v. N.J. Zinc Co., Inc.*, 828 F.2d 1001, 1005 (3d Cir. 1987).

The Court reviews *de novo* the portions of an R&R to which specific timely objections are made. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). Portions of the R&R to which no timely or specific objection is made are reviewed only for clear error. *Thomas v. Arn*, 474 U.S. 140, 149 (1985). "The clear error standard is highly deferential." *United States v. Moss*, 129 F.4th 187, 191 (3d Cir. 2025). Clear error arises where the Court "left with the definite and firm conviction that a mistake has been committed." *DLJ Mortg. Cap., Inc. v. Sheridan*, 975 F.3d 358, 372 (3d Cir. 2020).

**B.    Rule 41(b)**

Federal Rule of Civil Procedure[5] 41(b) authorizes dismissal for failure to prosecute or comply with court orders. "Dismissal for failure to prosecute a case does not require that the party take affirmative steps to delay the case." *McIntosh v. Nat'l R.R. Passenger Corp.*, No. 21-18987, 2023 WL 3645770, at *2 (D.N.J. May 23, 2023). "For instance, failure to comply with court orders, failure to respond to discovery or other consistent failures to act is sufficient to constitute lack of prosecution." *Id.*

In determining whether to dismiss a case under Rule 41(b), courts apply the six-factor test articulated in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984). Those factors include:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis*, 747 F.2d at 868. No single factor is dispositive; the Court must balance all six in light of the record. *Hildebrand v. Allegheny County*, 923 F.3d 128, 132 (3d Cir. 2019). "[N]ot all of the factors need to be satisfied to justify dismissal of a complaint for lack of prosecution." *Id.* Courts may also impose sanctions under Rules 16(f) and 37(b)(2), including dismissal when appropriate. *See* Fed. R. Civ. P. 16(f), 37(b)(2)(A).

Courts construe *pro se* pleadings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But "there are limits to [the Court's] procedural flexibility." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). *Pro se* litigants "must abide by the same rules that apply to all other litigants." *Id.* "[I]f a *pro se* plaintiff has been provided with ample opportunity and information to

---

[5] "Rule" or "Rules" hereinafter refers to the Federal Rules of Civil Procedure.

respond to a motion, but nevertheless has continually disregarded his obligations as a litigant, it is not beyond the discretion of the court to dismiss his claim." *McIntosh*, 2023 WL 3645770, at *2.

## III.    <u>DISCUSSION</u>

The Court has reviewed the R&R *de novo* and agrees with Judge Adams' reasoning. For the sake of a full review, the Court briefly addresses each of the *Poulis* factors and Plaintiff's objections.[6]

### A.    **Plaintiff is Personally Responsible for His Conduct**

The first *Poulis* factor "evaluates whether a party or counsel are primarily responsible for the conduct at issue." *Johnson v. Walmart Stores E., LP*, 772 F. Supp. 3d 551, 557 (D.N.J. 2025). "[A] *pro se* plaintiff is solely responsible for the progress of his case, whereas a plaintiff represented by counsel relies, at least in part, on his or her attorney." *Briscoe v. Klaus*, 538 F.3d 252, 258-59 (3d Cir. 2008). Because a *pro se* plaintiff is solely responsible for progressing his or her case, a *pro se* plaintiff is also solely "responsible for his failure to attend a pretrial conference or otherwise comply with a court's orders." *Id.* at 258.

As Judge Adams observed, Plaintiff gave incomplete, evasive, and incoherent responses to interrogatories (*See* ECF Nos. 74, 127-3); answered at least one question untruthfully,[7] (ECF No. 74 at 7); ignored requests for documents; supplemented his answers with "a single run-on

---

[6] Plaintiff offers only general objections broadly disagreeing with the R&R. "[P]roviding a complete *de novo* determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process." *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984). Here, Plaintiff identifies no specific finding, conclusion, claim, or portion of the R&R to which he objects. (*See generally* Pl.'s Objs.) Rather, Plaintiff's objections reflect a general disagreement with Judge Adams' analysis. Ordinarily, this is insufficient to trigger *de novo* review. *Defalco v. Rutgers Univ. Police Dep't*, No. 15-6607, 2019 WL 2591031, at *4 (D.N.J. June 25, 2019) (reviewing general objections for clear error). But, because Plaintiff is proceeding *pro se*, the Court construes his objections liberally and reviews the R&R *de novo*.

[7] As Judge Adams noted, Defendants requested documents related to another matter. (R&R at 10 n.4.) Plaintiff stated that was not his case. (*Id.*) But a review of the amended complaint for that other matter indicated Plaintiff consented to becoming a party plaintiff. (*Id.*)

8

paragraph not responsive to any particular request," (R&R at 11; *see also* ECF No. 127-4); and refused to attend two in-person status conferences. Plaintiff claims his non-compliance was due to health issues, communication, misunderstandings, and "procedural confusion." (Pl.'s Objs.) But as a *pro se* litigant, the buck stops and the responsibility rests with him. *Briscoe*, 538 F.3d at 258-59. Thus, Judge Adams correctly determined the first *Poulis* factor weighs in favor of dismissal.

### B.    Plaintiff's Conduct Prejudiced Defendants

The second *Poulis* factor considers the prejudice to Defendants resulting from Plaintiff's conduct. *Poulis*, 747 F.2d at 868. This is "a particularly important factor." *Hildebrand*, 923 F.3d at 134. Prejudice does not mean irreparable harm. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003). "[T]he burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial." *Id.* This "include[s] the burden that a party must bear when forced to file motions in response to the strategic discovery tactics of an adversary." *Id.* at 223.

As Judge Adams concluded, "there can be no doubt that Plaintiff's conduct has prejudiced Defendants." (R&R at 11.) In light of Plaintiff's conduct, Defendants were required to prepare and *re-prepare* discovery correspondence, bring motions and letters to the court, and respond to a blizzard of meritless submissions. They also confronted uncertainty about whether Plaintiff would appear for scheduled proceedings.[8] The consequences of Plaintiff's conduct—measured in time, cost, and the loss of orderly scheduling—prejudiced Defendants. *See Briscoe*, 538 F.3d at 259-60. Judge Adams, therefore, correctly determined the second *Poulis* factor favors dismissal.[9]

---

[8] Plaintiff's invocation of intermittent health complaints and administrative confusion does not erase the recurring practical burdens defendants have borne, nor does it excuse the loss of orderly scheduling and the incurrence of avoidable fees.

[9] Plaintiff replies that dismissal would prejudice him. All sanctions are prejudicial. But the *Poulis* test reserves the most prejudicial sanction-dismissal-for culpable parties who engage in bad faith, prejudicial, dilatory conduct and are undeterred by lesser sanctions. *Poulis*, 747 F.2d at 868. The mere fact that dismissal would prejudice Plaintiff is not a

### C.     Plaintiff's History of Dilatoriness

The third *Poulis* factor considers a history of dilatoriness. *See Poulis*, 747 F.2d at 868. "Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Johnson*, 772 F. Supp. 3d at 558 (quoting *Adams v. Trs. of N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 874 (3d Cir. 1994)). "Courts have found a history of dilatoriness supporting dismissal when a plaintiff's failure to comply with court orders, appear for hearings, or engage in discovery is extensive and repeated." *Id.* (quoting *Reilly v. Home Depot U.S.A., Inc.*, 670 F.Supp.3d 126, 144 (D.N.J. 2023)). "While extensive delay may weigh in favor of dismissal, 'a party's problematic acts must be evaluated in light of its behavior over the life of the case.'" *Hildebrand*, 923 F.3d at 135 (quoting *Adams*, 29 F.3d at 875).

Plaintiff never served his initial disclosures, provided "woefully deficient" discovery responses months late, offered Defendants only a "small handful of disorganized documents," defied Judge Adams' orders, and repeatedly failed to attend status conferences. (R&R at 12.) The Court finds a clear history of dilatoriness. Judge Adams, therefore, correctly concluded the third *Poulis* factor favors dismissal.

### D.     Plaintiff's Conduct was Willful and in Bad Faith

Under the fourth *Poulis* factor, the Court "must consider whether the conduct was 'the type of willful or contumacious behavior which was characterized as flagrant bad faith.'" *Briscoe*, 538 F.3d at 262 (quoting *Adams*, 29 F.3d at 875). Willfulness "involves intentional or self-serving behavior." *Id.* (quoting *Adams*, 29 F.3d at 875). "This factor applies upon 'callous disregard of

---

viable argument. Moreover, the second *Poulis* factor considers prejudice to Defendants, not Plaintiff. So, prejudice to Plaintiff is not a dispositive consideration.

responsibilities' by a party or counsel, not merely 'negligent behavior.'" *Johnson*, 772 F. Supp. 3d at 559 (quoting *Reilly*, 670 F.Supp.3d at 145). "[W]here the record is unclear as to whether a party acted in bad faith, a consistent failure to obey orders of the [C]ourt, at the very least, renders a party's actions willful for the purposes of the fourth *Poulis* factor." *Yancey v. Wal-Mart Corp.*, No. 15-6646, 2022 WL 972489, at *10 (D.N.J. Jan. 31, 2022) (alterations in original) (quoting *Hayes v. Nestor*, No. 09-6092, 2013 WL 5176703, at *5 (D.N.J. Sept. 12, 2013)). For example, the United States Supreme Court found plaintiffs acted willfully and in bad faith "where crucial interrogatories remained substantially unanswered" for seventeen months "despite numerous extensions granted at the eleventh hour and, in many instances, beyond the eleventh hour, and notwithstanding several admonitions by the Court and promises and commitments by the plaintiffs." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976).

Here, Plaintiff repeatedly failed to answer interrogatories or provide documents despite numerous deficiency letters, extensions, and court orders. Plaintiff failed to attend the April 2, 2025 status conference despite a two-month adjournment to allow Plaintiff to retain counsel. Plaintiff's untimely explanation for his absence indicated he "scheduled a last-minute telemed appointment at an urgent care to justify him missing Court." (R&R at 13.) Though Plaintiff committed to "make every effort to appear in person" on April 28, 2025 (ECF No. 166), he did not.

Plaintiff argues he has conducted this litigation in good faith, and his non-compliance was due to health problems, communication issues, and procedural confusion. (Pl.'s Objs.) The record, however, provides a completely different account. Plaintiff's medical documentation is misleading at best and does not identify a disability preventing Plaintiff from complying with court orders. (*See* Omnibus Scheduling Order 4.) Plaintiff contacted Defendants at least once (ECF No. 147-1)

and submitted hundreds of filings in this case. Plaintiff sought stays, emergency relief, or adjournments in response to scheduled hearings and deficiency orders (*see* ECF Nos. 176, 179, 182, 197), indicating his awareness of his obligations.

The record amply demonstrates Plaintiff engaged in bad faith conduct. Judge Adams did not err in finding the fourth *Poulis* factor weighed in favor of dismissal.

### E.    Lesser Sanctions Have Not Worked

The fifth *Poulis* factor requires the Court to consider whether less severe sanctions could remedy the misconduct as dismissal is a sanction of last resort. *Hildebrand*, 923 F.3d at 136. Alternatives include "a warning, a formal reprimand, placing the case at the bottom of the calendar, a fine, the imposition of costs or attorney fees[,] or the preclusion of claims or defenses." *Yancey*, 2022 WL 972489, at *10 (quoting *Hayes*, 2013 WL 5176703, at *5).

Here, Judge Adams employed an array of alternative measures: repeated orders for itemized, verified interrogatory responses, (ECF Nos. 57, 101); administratively termination of procedurally defective filings, (ECF No. 201); orders for Plaintiff to provide medical documentation, (*see* ECF Nos. 54, 138); awards of attorneys' fees for Plaintiff's failure to attend the April 2, 2025 status conference, (ECF No. 205); and warnings to Plaintiff that recommended dismissal would result from failure to appear at the April 28, 2025 status conference, (ECF No. 165). None of those lesser measures deterred Plaintiff's conduct.

Plaintiff argues Judge Adams could have imposed less drastic measures, such as "issuing specific deadlines with potential sanctions if not met." (Pl.'s Objs.) However, Judge Adams already did so in connection with the April 28, 2025 deadline for Plaintiff to appear in person, with dismissal as a sanction. (ECF No. 165.) Plaintiff ignored that warning. The Court is unconvinced

that similar measures would yield a different result. So, Judge Adams did not err in finding the fifth *Poulis* factor weighed in favor of dismissal.[10]

### F.      Plaintiff's Claim Lacks Merit

The sixth *Poulis* factor considers whether the complaint would survive a motion to dismiss under Rule 12(b)(6). *Briscoe*, 538 F.3d at 263. To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While courts construe *pro se* complaints liberally, *pro se* litigants "are not exempt from complying with federal pleading standards." *Beasley v. Howard*, 623 F. Supp. 3d 434, 439 (D.N.J. 2022)

The Court conducts a three-step inquiry in evaluating a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the Court identifies "the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the Court accepts all plaintiff's well-pleaded factual allegations as true and "construe[s] the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). But the Court disregards "legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). Third, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

---

[10] The Court notes that Judge Adams chose dismissal without prejudice, giving Plaintiff one more chance to cure all outstanding deficiencies, though a harsher sanction could have been imposed. (R&R at 14.)

To state a *prima facie* employment discrimination claim under Title VII, "a plaintiff must allege: (1) membership in a protected class; (2) qualification for the position sought to be retained or attained; (3) an adverse employment action; and (4) that 'the action occurred under circumstances that could give rise to an inference of intentional discrimination.'" *Jean-Pierre v. Schwers*, 682 F. App'x 145, 147 (3d Cir. 2017) (quoting *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)).

Judge Adams was "unable to determine the meritoriousness of Plaintiff's claims based on the record," but noted Plaintiff's frequent, simultaneous, and identical filings in the nine cases he has pending in this District undermine the merits of any single individual claim. (R&R at 14.) Judge Adams thus concluded the sixth *Poulis* factor weighed in favor of dismissal.

The Court finds Plaintiff failed to plausibly allege employment discrimination. At most, he parrots legal conclusions. Plaintiff asserts his "civil rights were violated when the Defendants did knowingly and intentionally change Plaintiff's employment hours and remove the Plaintiff from duty due to the Plaintiff's race and in retaliation against Plaintiff for making complaints against other employees" (Compl. *11.) Likewise, Plaintiff claims "Defendants did utilize racially discriminatory remarks against Plaintiff that are known to a reasonably prudent person to be derogatory and prejudice toward a specific race, this being a direct method of prejudice by a decisionmaker that expresses a discriminatory motive." (*Id.*) Plaintiff must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Because he does not, he fails to state a plausible claim for employment discrimination. *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). Accordingly, the sixth *Poulis* factor weighs in favor of dismissal.

14

Even if Plaintiff's claim had merit, it would "not override a finding that the other factors lean in favor of dismissal." *Duda v. Rentokil N. Am., Inc.*, No. 18-13930, 2020 WL 1227526, at *4 (D.N.J. Mar. 12, 2020). *See also Hoffman v. Palace Entm't*, 621 F. App'x 112, 116 (3d Cir. 2015) (finding the sixth factor was "insufficient to override the preceding factors, which all weigh against [the plaintiff]."); *Opta Sys., LLC v. Daewoo Elecs. Am.*, 483 F. Supp. 2d 400, 405-06 (D.N.J. 2007) ("[T]he inclusion of [the sixth] factor is largely neutral and does not change the Court's conclusion that the balance of the *Poulis* factors supports dismissal of this action.").

In sum, the Court has carefully considered the *Poulis* factors and determined that they all weigh in favor of dismissal.

## IV.    **CONCLUSION**

For the reasons set forth above, Plaintiff's objections (ECF No. 214) are **DENIED**, Judge Adams' R&R (ECF No. 204) is **AFFIRMED**, and the Complaint (ECF No. 1) is **DISMISSED** *without prejudice*. Plaintiff shall have thirty days from the date of this Opinion and Order to cure all outstanding discovery deficiencies and move to reinstate the case. Otherwise, Defendants may apply to convert this dismissal into a dismissal *with prejudice*. An appropriate Order accompanies this Opinion.

**DATED:  12/4/2025**

_____
HONORABLE JULIEN XAVIER NEALS
United States District Judge